## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-cv-1162-MN-MPT |
| | ) | |
| EU AUTOMATION, INC. and EU | ) | |
| AUTOMATION AMERICA LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

On August 11, 2021, Rockwell Automation, Inc. ("Rockwell" or "plaintiff") brought

this trademark action alleging misleading advertising and sale of infringing Rockwell

goods by EU Automation, Inc. ("EU Illinois") and EU Automation America Ltd. ("EU UK")

(collectively, the "EU Defendants" or "defendants").[1]  Defendants allegedly:

> engaged in the unlawful sale and distribution within the United States of
> unauthorized gray market Rockwell products, which are materially
> different from those sold by Rockwell and its authorized distributors in the
> United States ("Genuine Rockwell Products") . . . [and] bear registered
> trademarks owned by Rockwell, ([the] "Asserted Trademarks"), yet differ
> from Genuine Rockwell Products in many respects[.]

> [The] offers to sell and . . . sales of materially different Rockwell products
> infringe Rockwell's Asserted Trademarks; and, . . . [defendants'] violations
> have caused and continue to cause confusion, mistake, and/or deception
> to the public and constitute willful and deliberate trademark infringement.[2]

Presently before the court is defendants' Motion to Dismiss the Complaint for

lack of personal jurisdiction pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2),

---

[1] D.I. 1 ("Complaint") ¶ 1. EU Automation Inc. and EU Automation America Ltd.
are Illinois and United Kingdom entities, respectively.  *Id.* ¶¶ 6-7. Plaintiff refers
defendants as "EUA Inc." and "EUA America," whereas defendants refer to "EU Illinois"
and "EU UK."  To avoid confusion, the court adopts defendants' naming convention.
[2] *Id.* ¶¶ 2-3.

and for improper venue pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3) ("Motion").[3]  Plaintiff opposes the Motion and requests jurisdictional discovery.  For the following reasons, the court recommends the Motion be Granted-in-Part and Denied-in-Part, and Denying plaintiff's request for jurisdictional discovery.

## I.    BACKGROUND FACTS[4]

Plaintiff Rockwell is the world's largest company dedicated to industrial automation and information.[5]  Its products run a variety of industrial and commercial operations including:  automotive, food processing, and pharmaceutical assembly lines; critical infrastructure such as oil refineries; and automation involving the safety of amusement park rides.[6]  A commonality among its products is that breakdowns are extremely costly and potentially dangerous.[7]  Thus, Rockwell does not sell to a mass consumer market and its industrial control products include a "quality assurance safety net" to maintain safe and reliable operation.[8]  Its products are sold only by Rockwell and highly trained domain experts employed by its Authorized Distributors ("ADs").[9]

---

[3] D.I. 15.  Briefing is found at D.I. 16; D.I. 20; and D.I. 22.  The Motion is supported by the Declarations of Claudia Jarrett (Head of Sales, EU Illinois) and Jonathan Wilkins (Director and co-owner, EU UK).  D.I. 17 (Jarrett Decl.); D.I. 17-1 (Ex. A); D.I. 18 (Wilkins Decl.).  Plaintiff's opposition is supported by the Declaration of Neal McLaughlin (plaintiff's counsel).  D.I. 21 (McLaughlin Decl.); D.I. 21-1 (Exs. A-E).

[4] Relevant facts are from the Complaint and declarations, which the court may consider on a motion to dismiss for lack of personal jurisdiction.  *See, e.g., TriDinetworks Ltd. v. NXP USA, Inc.*, C.A. No. 19-1062-CFC-CJB, 2020 WL 2220152, at *2 (D. Del. May 7, 2020).

[5] D.I. 1 ¶ 21.  Rockwell is a Delaware corporation with its principal place of business in Wisconsin.  *Id.* ¶ 5.

[6] *Id.* ¶ 22.

[7] *Id.* ¶ 23.

[8] *Id.* ¶ 24.

[9] *Id.* ¶ 25.

Rockwell monitors its products through its ADs and issues software and firmware updates, product safety notices, and/or recalls designed to preempt problems.[10]

Defendant EU Illinois' principal place of business in Elk Grove Village, Illinois.[11] The Elk Grove Village facility is its only physical location in the United States.[12] It has no other offices, warehouses, or physical spaces in this country, including Delaware.[13] All EU Illinois employees work and are paid in Illinois; none travel to Delaware to interact with customers or for any other business purpose.[14] All sales to customers in the U.S. are made solely by EU Illinois.[15]

Defendant EU UK's principal place of business in the United Kingdom.[16] EU UK provides "some administrative services" for EU Illinois, but does not control its operations.[17] It has no U.S. employees, offices, warehouses, or other physical space, including in Delaware.[18] No EU UK employee was ever directed to travel to Delaware to interact with customers or for any other business purpose.[19]

The EU Defendants serve as "middlemen" who purchase machine parts in the market to resell.[20] Part of their business is sourcing obsolete parts for older automation equipment so customers can continue to operate existing equipment with replacement

---

[10] *Id.*
[11] *Id.* ¶ 6.
[12] D.I. 17 ¶ 4.
[13] *Id.* ¶ 5.
[14] *Id.* ¶¶ 6, 19.
[15] *Id.* ¶ 15.
[16] D.I. 18 ¶ 4.
[17] *Id.* ¶ 5.
[18] *Id.* ¶¶ 6-7.
[19] *Id.* ¶ 10.
[20] D.I. 1 ¶ 58; D.I. 17 ¶ 9.

parts rather than purchase new equipment from the manufacturer.[21]

EU Illinois advertises parts for sale in the U.S. on euautomation.com/us.[22] Customers cannot buy directly from the website:  they must request a price quote via a phone call to a number on the website or a "click on a link."[23]  The customer then receives a quote by email or phone and decides whether to purchase at the quoted price.[24]  Any purchase is also made by phone or email.[25]

From 2016 to date, EU Illinois generated U.S. sales of $107 million in pre-expense revenue, of which ~$465,000, or 0.4%, was from Delaware customers.[26]  Sales of parts reflecting Rockwell-owned brands or trademarks generated ~$19,000, or 4%, of total Delaware revenue, and less than 0.01% of total U.S. revenue.[27]  EU UK does not make sales or generate revenue in the U.S., including Delaware.[28]

The EU Defendants ceased selling and advertising Rockwell products in response to plaintiff's allegations.[29]  EU Illinois began phasing out sales in October 2020 by no longer accepting orders for Rockwell products from new U.S. customers, and only filling pre-existing orders for parts or orders from existing customers.[30]  Defendants' website ceased advertising plaintiff's products worldwide by November 14, 2020.[31]  EU

---

[21] D.I. 17 ¶ 10.
[22] *Id.* ¶ 11.
[23] *Id.* ¶ 15.
[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 22.
[27] *Id.* ¶ 24.
[28] D.I. 18 ¶ 8.
[29] *Id.* ¶ 21.
[30] D.I. 17 ¶ 25.
[31] D.I. 18 ¶ 22.

Illinois made its last U.S. shipment of Rockwell products in August 2021.[32]

On August 11, 2021, plaintiff filed this action alleging "misleading advertising and sale of infringing Rockwell goods" by defendants.[33]  On October 22, 2021, defendants filed the instant Motion.[34]

## II.    LEGAL STANDARDS

### A.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

Pursuant to Rule 12(b)(2), the court may dismiss a suit for lack of jurisdiction over the person.  When a defendant challenges a court's exercise of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'"[35]  "To meet this burden, the plaintiff must produce 'sworn affidavits or other competent evidence,' since a Rule 12(b)(2) motion 'requires resolution of factual issues outside of the pleadings.'"[36]  "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, [however,] the plaintiff need only establish a prima facie case of

---

[32] D.I. 17 ¶ 27.

[33] D.I. 1 ¶ 1.  The Complaint alleges Trademark Infringement (15 U.S.C. § 1114), False Advertising (15 U.S.C. § 1125(a)(1)(B)), False Designation of Origin (15 U.S.C. § 1125(a)(1)(A)), Statutory Unfair Competition (6 *Del. C.* § 2532 *et seq.*), Common Law Unfair Competition, and Unjust Enrichment. *Id.*  ¶¶ 144-84 (Counts I-VI).  Plaintiff seeks, *inter alia*, damages and injunctions. *Id.* at 43-44 (Prayer for Relief).

[34] D.I. 15.

[35] *Turner v. Prince George's Cty. Pub. Schs.*, 694 Fed. App'x 64, 66 (3d Cir. 2017) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

[36] *Brasure's Pest Control, Inc. v. Air Cleaning Equip., Inc.*, C.A. No. 17-323-RGA-MPT, 2018 WL 337747, at *1 (D. Del. Jan. 9, 2018) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[37]

Two requirements, one statutory and one constitutional, must be satisfied for personal jurisdiction to exist over a defendant.[38]  "First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."[39]  The court must, therefore, "determine whether there is a statutory basis for jurisdiction under the Delaware long-arm statute."[40]  "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates [defendants'] constitutional right to due process."[41]

Delaware's long-arm statute, 10 *Del. C.* § 3104, provides in pertinent part:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State; [or]
>
> (3) Causes tortious injury in the State by an act or omission in this State; . . . .[42]

---

[37] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002)).

[38] *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002).

[39] *Id.* (citing FED. R. CIV . P. 4(e)).

[40] *Id.* (citing 10 *Del. C.* § 3104(c)).

[41] *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)); *see also IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

[42] 10 *Del. C.* § 3104.

"The Delaware Supreme Court has construed the long-arm statute liberally to confer jurisdiction to the maximum extent possible in order 'to provide residents a means of redress against those not subject to personal service within the State.'"[43]

The Due Process Clause "requires that a non-resident defendant have certain minimum contacts with a forum state–contacts that would provide the defendant 'fair warning' that he might be sued there–before a federal court in that forum can constitutionally exercise personal jurisdiction over that defendant."[44]

## B.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3)

Rule 12(b)(3) allows a defendant to move to dismiss for improper venue.  The movant has the burden of proving that venue is improper in the selected forum.[45]  That question is generally governed by 28 U.S.C. § 1391,[46] which provides:

> [a] civil action may be brought in–(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[47]

When venue is challenged, the court must determine whether the case falls

---

[43] *TriStrata Tech, Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 639 (D. Del. 2008) (quoting *Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 278 (D. Del. 2007), *aff'd*, 320 F. App'x 113 (3d Cir. 2008) (per curiam)).

[44] *Turner*, 694 Fed. App'x at 65-66 (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299–300 (3d Cir. 2008)).

[45] *See Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).

[46] *See Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).

[47] 28 U.S.C. § 1391(b).

within one of the three categories set forth in § 1391(b).[48]  "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)."[49]

## III.   POSITIONS OF THE PARTIES

The EU Defendants maintain the Complaint must be dismissed pursuant to Rule 12(b)(2) for lack of general or specific jurisdiction over them, and for improper venue pursuant to Rule 12(b)(3).

Defendants argue personal jurisdiction does not exist because the Complaint does not cite to the Delaware long-arm statute or otherwise explain how jurisdiction exists under that statute, or how the exercise of jurisdiction under the state long-arm statute comports with constitutional due process.[50]

They assert venue is improper because none of the three categories recited in 28 U.S.C. § 1391(b) showing proper venue applies here.[51]

Plaintiff argues:

1.  Defendants' admitted sales and business ties in Delaware result in personal jurisdiction in Delaware.  Defendants' substantial revenues from Delaware customers, including from the sale of accused Unauthorized Rockwell Products, were the result of intentional, personalized and direct email and telephone conversations with those Delaware customers.  In addition, the torts underlying Rockwell's claims were committed in Delaware.  Such business ties and tortious acts satisfy the Delaware long-arm statute as well as Constitutional requirements.

2.  Defendant [EU UK] is also subject to jurisdiction in this Court at least in accordance with FED. R. CIV. P. 4(k)(2).  It has been served, has not

---

[48] *See Atlantic Marine*, 571 U.S. at 56.
[49] *Id.*
[50] D.I. 16 at 8-13.
[51] *Id.* at 13-14.

8

claimed that it is subject to suit in another jurisdiction, and exercising jurisdiction in this court is consistent with the U.S. Constitution and laws.

3. Venue in this Court is proper for at least the reason that this Court has jurisdiction over defendants.[52]

## IV.   DISCUSSION

Rockwell argues each of subsections 1 through 3 of the Delaware long-arm statute, 10 *Del. C.* § 3104(c), provides specific jurisdiction over defendants, and that exercise of jurisdiction does not violate defendants' due process rights.  It argues venue is proper under both 28 U.S.C. § 1391(b)(1) and (2).

### A.      Whether Specific Jurisdiction Exists Over the EU Defendants[53]

To find specific jurisdiction exists, the court must conclude that both the statutory requirements of the Delaware long-arm statue are satisfied, and that defendants' due process rights are not violated.[54]

#### 1. EU Illinois

##### a.        Delaware Long-Arm Statute

The Complaint's jurisdictional allegations are based on defendants' "interactive website accessible in this forum" resulting in offers and sales of "unauthorized Rockwell Products at issue in this forum that infringe[] Rockwell's Asserted Trademarks."[55]  The EU Defendants contend those allegations are  insufficient to establish personal

---

[52] D.I. 20 at 4.

[53] Plaintiffs do not argue the court can exercise general jurisdiction over defendants.

[54] *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002).

[55] *See* D.I. 1 ¶¶ 15-18.

jurisdiction.[56]

"Courts within the Third Circuit have traditionally required 'something more' from defendants than the knowledge that their website could be viewed or that their product could be used in a forum state before considering whether specific jurisdiction is proper."[57]  Defendants contend the allegation that their website is accessible in the forum lacks the required "something more" to support specific jurisdiction.[58]  They assert EU Illinois' "nearly non-existent" contact with Delaware customers is insufficient to establish jurisdiction because the "consumers are targeting EU Illinois, not vice versa."[59]  Defendants also contend there is no jurisdiction because EU Illinois' Delaware sales of Rockwell parts generate a very small percentage of its national revenue.[60]

Plaintiff notes defendants' $19,000 in sales of Unauthorized Rockwell Products to Delaware customers via its website requires "no less than three communications back and forth between [EU Illinois] and its customers."[61]  This "hands-on approach," involving "back-and-forth" email and phone correspondence with each customer, purportedly supports plaintiff's claims.[62]  Defendants' position that jurisdiction is absent

---

[56] D.I. 16 at 10.
[57] *Kloth*, 494 F. Supp. 2d at 279 (citation omitted).
[58] D.I. 16 at 10.  Defendants state "[s]pecific jurisdiction does not exist where the 'plaintiff offers no allegations . . . from which the Court could conclude that defendants' website *specifically targets* [Delaware] or its residents."  *Id.* (emphasis added) (quoting *Telebrands Corp. v. Altair Instruments Inc.*, C.A. No. 18-16234 (SDW) (LDW), 2019 WL 3804837, at *6 (D.N.J. Aug. 13, 2019)).  There, the court was not discussing specific jurisdiction because the plaintiff "focuse[d] its argument *solely on general jurisdiction*." *Telebrands*, 2019 WL 3804837, at *3 (emphasis added).  Here, Rockwell also does not argue general jurisdiction applies.
[59] *Id.* at 11.
[60] *Id.* at 5.
[61] D.I. 20 at 9 (citing D.I. 16 at 4, 5).
[62] *Id.* at 12.

because EU Illinois "relatively little revenue from the sale of Rockwell parts in Delaware" is one that has been rejected repeatedly because "even a single sale of an accused product" is sufficient to confer specific jurisdiction over a defendant in the Third Circuit.[63]

The court determines it has specific jurisdiction over EU Illinois under Delaware's long-arm statute.

The court first addresses defendants' argument that their informational, or passive, website does not provide the "something more" upon which specific jurisdiction may be found.[64]  Defendants argue "[w]here a website 'only allows potential customers to email requests for' information, but 'does not permit customers to place orders, make payments, or engage in any business transactions,' the website is 'essentially passive' and does not permit the exercise of specific jurisdiction."[65]  They contend customers target EU Illinois and not vice versa because most Delaware consumers find their website through a Google search.[66]  If a customer navigating the website finds an item they would like to purchase, they may request a quote from defendants and decide whether to purchase the item once they receive the quote.[67]

---

[63] *Id.* 9-10 (quoting *Osteotech, Inc. v. GenSci Regeneration Scis.*, 6 F. Supp. 2d 349,354 (D.N.J. 1998) (finding argument that a "single sale . . . represent[ing] only a tiny fraction of its total sales is not persuasive" in avoiding specific jurisdiction because it "confuses the nature of the contacts involved in analyzing specific and general jurisdiction"); and citing *LaNuova D & B, S.P.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) ("even a single transaction is sufficient"); *Friedman v. Alcatel Alsthom*, 752 A.2d 544, 549 (Del. Ch. 1999) (same); *Tristrata*, 537 F. Supp. 2d at 638-41 (D. Del. 2008) (rejecting defendant's argument that 0.0015% of its overall sales occurring in Delaware was insufficient to confer jurisdiction in under the Delaware long-arm statute.)).

[64] D.I. 16 at 11.

[65] *Id.* at 10 (quoting *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 212 (3d Cir. 2014)).

[66] *Id.* at 11.

[67] *Id.*

In *Ackourey v. Sonellas Custom Tailors*, upon which defendants heavily rely, the Third Circuit determined there was no personal jurisdiction where the website-at-issue "list[ed] a travel schedule and only allow[ed] potential customers to email requests for appointments[, but did] not permit customers to place orders, make payments, or engage in any business transactions . . . [thus] render[ing] Defendants' website essentially passive."[68]  The EU Defendants maintain Delaware consumers likewise cannot "place orders, make payments, or engage in any business transactions" on the euautomation.com website.[69]

In *Ackourey*, the court cited *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa.1997) and *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) when discussing the "sliding scale" of interactive and passive websites in a personal jurisdiction analysis and stated "'[*Zippo*] has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site.'"[70]  In its *Toys "R" Us* opinion, the Third Circuit stated:

> the *Zippo* court . . . underscored the intentional nature of the defendant's conduct vis-a-vis the forum state.  In *Zippo*, the defendant had purposefully availed itself of doing business in Pennsylvania when it "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing that the contacts would result in business relationships with Pennsylvania customers.

---

[68] *Ackourey*, 573 F. App'x at 212.

[69] D.I. 16 at 11.  Defendants also cite to *Sebastian Brown Productions LLC v. Muzooka*, C.A. No. 14-009-SLR, 2015 WL 1467255, at *3 (D. Del. Mar. 30, 2015) (finding no specific jurisdiction in the absence of an "indication that any Delaware resident has done more than interact with the accused website").  As discussed below, Delaware customer-interaction with EU Illinois was more that mere interaction with its website.

[70] *See Ackourey*, 573 F. App'x at 211-12 (quoting *Toys "R" Us*, 318 F.3d at 452).

> When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.' . . . *If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, . . . it could have chosen not to sell its services to Pennsylvania residents.*[71]

On the "sliding scale" of interactive and passive websites, the court finds defendants' website is not merely passive.  There is no dispute defendants operated a website accessible in Delaware, EU Illinois received orders and payments from Delaware customers as a consequence of their initially accessing that website, and EU Illinois shipped products reflecting Rockwell brands or trademarks to Delaware.[72]

The court also rejects defendants argument that EU Illinois' sales to Delaware customers was so insignificant as to preclude jurisdiction.  In opposition to jurisdiction under the Delaware long-arm statute, defendants' reply brief does not distinguish the *Osteotech*, *LaNuova*, *Friedman*, and *Tristrata* cases cited by plaintiff which found the long-arm statute satisfied by few, or a single, sale to the forum.[73]  *Tristrata*, for instance, found jurisdiction under the long-arm statute where a third-party email campaign resulted in 0.0015% of the defendant's revenue.[74]  There, as here, the defendant had "no offices, telephone listings, employees, bank accounts, advertising, personal or real

---

[71] *Toys "R" Us*, 318 F.3d at 452 (emphasis added) (citations omitted).

[72] D.I. 17 ¶¶ 11, 15, 21-22, 24-25.  Defendants argue the Motion should be granted based on Rockwell's failure to submit "a sworn affidavit or other competent evidence" to establish the EU Defendants' minimum contacts with Delaware.  D.I. 22 at 1 (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).  Here, defendants' own affidavits demonstrate EU Illinois' minimum contacts.

[73] Defendants cite *Friedman* in the section of their reply brief arguing *the Due Process step* is not met.  They do, however, again rely on *Ackourey* (D.I. 22 at 2) which the court has distinguished.

[74] *Tristrata*, 537 F. Supp. 2d at 638.

13

property in Delaware, or any ongoing contracts with any Delaware customers."[75]

Likewise, the defendant argued it had no idea how many emails were sent to Delaware

residents and that "the 'random transactions' resulting from the e-mail campaign do not

rise to the level of 'transacting business' in Delaware, [and] that the purchases made by

Delaware residents occurred outside Delaware[.]"[76]  Also paralleling the arguments

here, the defendant insisted the plaintiff presented no evidence its website was

interactive, and that no sales in Delaware were derived from its website.[77]  The *Tristrata*

court concluded it had jurisdiction under § 3104(c)(3) because the defendant "received

orders from Delaware residents, and delivered its products to Delaware.  There is no

evidence that [defendant] attempted to limit its e-mail marketing campaign or shipment

of its product to certain states only."[78]

　　Thus, the court determines it has specific jurisdiction over EU Illinois under

§ 3104(c)(1)-(3).  Subsection (c)(1) applies when a defendant "[t]ransacts any business

or performs any character of work or service in the State," subsection (c)(2) applies

when a defendant "[c]ontracts to supply services or things in this State," and (c)(3)

applies when a defendant "[c]auses tortious injury in the State by an act or omission in

this State."[79]  Each subsection requires "that the cause of action arise from the

defendant's conduct in the forum state."  Applicable to subsections (c)(1) and (2),

"[w]here personal jurisdiction is asserted on a transactional basis, even a single

---

[75] *Id.* at 639.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] 10 *Del. C.* § 3104(c).

transaction is sufficient if the claim has its origin in the asserted transaction."[80]  Similarly,

for a tortious injury claim under subsection (c)(3), "a single 'act or omission' in the State

in which the injury was caused will suffice."[81]  Also, "the focus of [the court's] venue

inquiry in a Lanham Act trademark infringement case is the location where the

unauthorized passing off takes place–whether that occurs solely within one district or in

many."[82]

The court determines a preponderance of the evidence supports a finding that

each of these requirements is met.

### b.    Due Process

Having determined there is a statutory basis for jurisdiction over EU Illinois, the

court must address the second step of its analysis, i.e., whether an exercise of

jurisdiction under § 3104(c) comports with EU Illinois' constitutional due process.[83]  "The

Due Process Clause of the Fourteenth Amendment requires that a non-resident

defendant have certain minimum contacts with a forum state–contacts that would

provide the defendant 'fair warning' that he might be sued there–before a federal court

in that forum can constitutionally exercise personal jurisdiction over that defendant."[84]

The purpose of this requirement is to ensure "defendant's conduct and connection with

the forum state are such that he should reasonably anticipate being haled into court

---

[80] *See LaNuova*, 513 A.2d at 768.

[81] *Id.* at 768.

[82] *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).

[83] *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp.
2d 400, 403 (D. Del. 2002) (citations omitted).

[84] *Turner*, 694 Fed. App'x at 65-66 (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537
F.3d 290, 299–300 (3d Cir. 2008)).

there."[85]  Specific jurisdiction is proper where (1) a defendant has purposefully directed its activities at residents of the forum state, and (2) the alleged injuries arise out of those activities.[86]

Rockwell contends the court's exercise of specific jurisdiction comports with due process because EU Illinois "purposefully communicated with and sold accused Unauthorized Rockwell Products to Delaware customers [and] Rockwell's claims allege injuries from these acts."[87]  Unfortunately, defendant's opening brief does not distinctly separate its statutory and constitutional arguments with regard to specific jurisdiction. Its reply, however, specifically argues due process is not satisfied because EU Illinois did not have "minimum contacts" with Delaware or "purposely avail" itself to this forum.[88] The percentage of revenue derived from EU Illinois' sale of Rockwell products compared to its nationwide product sales purportedly fails to meet the "minimum contacts" requirement.[89]  The "purposeful availment" requirement is allegedly not met because defendants' website does not target Delaware, EU Illinois does not actively seek business in this state via its website or otherwise, it has no employees or physical presence here, and it received minimal revenue from the state.[90]  Defendants maintain EU Illinois' contacts with Delaware were "*de minimis*, 'fortuitous,' 'random,' 'attenuated'

---

[85] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).
[86] *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 275-76 (D. Del. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).
[87] D.I. 20 at 11.
[88] D.I. 22 at 4 (citing *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 539 (E.D. Pa. 1999) (due process requires:  (1) "minimum contacts" with Delaware; and (2) "purposeful availment," by EU Illinois.)).
[89] *Id.* at 4-5.
[90] *Id.* at 5.

and insufficient to establish purposeful availment."[91]

The court is not persuaded by defendants' arguments.  The court finds EU Illinois purposefully directed its activities at Delaware residents.  As discussed above, defendants' website was accessible in Delaware, and EU Illinois knowingly interacted with residents of Delaware, received orders and payments from customers in Delaware, and shipped Rockwell products to Delaware.  "The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over defendant."[92]  Rockwell has also alleged injury from EU Illinois's sales.

The court also finds EU Illinois purposefully availed itself to this forum.  Evidence of purposeful availment can be "directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts."[93]  As discussed, EU Illinois made relevant sales as a result of Delaware customers accessing its website and subsequent interactions between EU Illinois and those customers.  Since 2016, defendant EU Illinois generated ~$19,000 in revenue selling Rockwell products to Delaware customers.[94]  These sales do not appear to be "the kind of 'fortuitous,' 'random,' and 'attenuated' contacts the Supreme Court has held insufficient to warrant the exercise of jurisdiction."[95]  EU Illinois purposely availed itself to the jurisdiction of this state by conducting business with Delaware residents,

_____

[91] D.I. 22 at 6-7.
[92] *Osteotech, Inc. v. GenSci Regeneration Scis., Inc.*, 6 F. Supp. 2d 349, 354 (D.N.J.1998) (citation omitted).
[93] *Toys "R" Us*, 318 F3d at 454.
[94]  D.I. 17 ¶ 24.
[95] *See Toys "R" Us*, 318 F.3d at 445 (quoting *Burger King*, at 471 U.S. at 475).

communicating with them electronically or by phone, and knowingly shipping products into the state.  If a corporation determines that the risk of being subject to personal jurisdiction in a forum is too great, it may choose to sever its connection to the state.[96] When a defendant makes a conscious choice to conduct business with the residents of a forum state, "it has clear notice that it is subject to suit there."[97]  EU Illinois made that conscious choice.  It was under no obligation to enter into sales transactions with Delaware residents:  rather, it freely did so.

Thus, the court recommends the Motion to dismiss for lack of personal jurisdiction as to EU Illinois be denied.

### 2.    EU UK

Rockwell contends EU UK is also subject to personal jurisdiction in Delaware.  It maintains defendants do not dispute its allegations that EU UK owns and shares overlapping directors and officers with EU Illinois, or that EU Illinois is an agent of EU UK.[98]  It argues this alone is sufficient to establish jurisdiction over EU UK, as "[u]nder agency theory, a defendant company may be subject to personal jurisdiction under Delaware's long-arm statute by virtue of the court's personal jurisdiction over the defendant company's affiliate."[99]

---

[96] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).
[97] *Id.*
[98] D.I. 20 at 12 (citing D.I. 1 ¶¶ 12-14).
[99] *Id.* (quoting *Robert Bosch LLC v. Alberee Prods.*, 70 F. Supp. 3d 665, 678-79 (D. Del. 2014) (finding personal jurisdiction existed over a second defendant where the owner of one defendant selling an accused product in Delaware was a "top manager" at the second defendant and the second defendant's "intended targeting of the Delaware market resulted in the introduction of the accused product into Delaware."); *see also* 10 *Del. C.* § 3104(c) ("a court may exercise personal jurisdiction over any nonresident, . . . *who in person or through an agent* . . . .") (emphasis added)).

LinkedIn profiles of EU UK employees purportedly "demonstrate a concerted effort to 'supply' industrial automation equipment" to customers in the U.S., with some profiles inviting sales inquiries directly from U.S. customers.[100]  Plaintiff also alleges EU UK controls EU Illinois and EU Illinois is nothing more than the alter ego of EU UK.[101]

Defendants argue EU UK is not subject to personal jurisdiction.  They assert the Complaint alleges no jurisdictional fact as to EU UK.[102]  According to Wilkins' declaration, in the United States, including Delaware, EU UK does not make any sales, generate revenue, have employees, own, rent, lease, or occupy real property.[103] Defendants maintain plaintiff fails to "meet its heavy burden of sustaining [its jurisdictional] theories by 'clear and convincing' evidence–it cannot rely, as it does, on allegations asserted upon its mere 'information and belief.'"[104]  "[Plaintiff] alleges no fact sufficient to meet the high bar for imputing the contacts of one corporate entity to a separate entity."[105]  They argue plaintiff's position is sustainable only if "the two entities are disregarding corporate separateness *to perpetrate a fraud*" and emphasize that plaintiff did not allege the EU defendants are engaged in a fraud.[106]  They assert allegations based on "information and belief" and LinkedIn profiles are legally insufficient to show that EU UK is controlling the day-to-day activities of EU Illinois.[107]

The court determines it does not have specific jurisdiction over EU UK.  Rockwell

---

[100] *Id.* at 13 (citing D.I. 21, Exs. A-E).
[101] D.I. 20 at (citing D.I. 1  ¶¶ 13-14).
[102] D.I. 16 at 12.
[103] D.I. 18 ¶¶ 6-8.
[104] D.I. 22 at 7.
[105] D.I. 16 at 13.
[106] D.I. 22 at 7 (emphasis in original).
[107] *Id.*

argues EU UK is subject to personal jurisdiction in Delaware under the "alter ego" and agency theories.[108]

Under the "alter ego" theory, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise "controls" the subsidiary, and general or specific personal jurisdiction exists over the subsidiary, then personal jurisdiction exists over the parent.[109]   Under agency theory, a defendant company may be subject to personal jurisdiction through Delaware's long-arm statute by virtue of the court's personal jurisdiction over the defendant company's affiliate.[110]   The factors considered in analyzing an agency relationship are: "[1] the extent of overlap of officers and directors, [2] methods of financing, [3] the division of responsibility for day-to-day management, and [4] the process by which each corporation obtains its business."[111]   "Under the alter ego or piercing the corporate veil doctrine, courts will ignore the corporate boundaries between parent and subsidiary if fraud or inequity is shown.  The agency theory, by contrast, examines the degree of control which the parent exercises over the subsidiary."[112]

---

[108] D.I. 20 at 12-14.

[109] *See Britax Child Safety, Inc. v. Nuna Int'l B.V.*, 321 F. Supp. 3d 546, 554 (E.D. Pa. 2018) (citing *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018)). The "burden to establish alter ego relationship 'is notoriously difficult for plaintiffs to meet'" . . . and cannot be met where plaintiffs, *inter alia*, "have not shown *any* evidence of fraud, unfairness, or injustice."  *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, C.A. No. 17-374-LPS (CONSOLIDATED), C.A. No. 17-379-LPS, 2018 WL 5109836, at *4-5 (D. Del. Oct. 18, 2018) (emphasis in original).

[110] *See Intellectual Ventures I LLC v. Nikon Corp.*, 935 F. Supp. 2d 787, 793 (D. Del. 2013).

[111] *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 6004079, at *12 (D. Del. Nov. 4, 2011) (citation omitted).

[112] *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) (citations omitted).

The court rejects both of plaintiff's theories as to EU UK.  Rockwell does not allege fraud on the part of EU UK.  There is no dispute EU UK has no employees, property, or sales and revenues in this country or state.[113]  Plaintiff's allegation that EU UK controls EU Illinois, and that EU Illinois is nothing more than the alter ego of EU UK are merely plead on "information and belief."[114]  Its "evidentiary" support are printouts of LinkedIn profiles.[115]  Even viewing the facts in the light most favorable to plaintiff,[116] the court find its allegations insufficient to support a prima facie showing of specific jurisdiction over EU UK.[117]

### B.    Whether FEDERAL RULE OF CIVIL PROCEDURE 4(k)(2) Confers Jurisdiction Over EU UK

Alternatively, plaintiff argues personal jurisdiction exists over EU UK under FEDERAL RULE OF CIVIL PROCEDURE 4(k)(2), which serves as a federal long-arm statute.[118]  The rule allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to

---

[113] D.I. 18 ¶¶ 6-8.

[114] *See* D.I. 1 ¶¶ 13-14.

[115] D.I. 21, Exs. A-E.

[116] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

[117] *See*, *e.g.*, *Sheeran v. Blyth Shipholding S.A.*, C.A. No. 14-5482 (JBS/AMD), 2017 WL 1157847, at *6 n.5 (D.N.J. Mar. 27, 2017) (finding LinkedIn profiles inadmissible because plaintiff did not establish "when they were created or last updated to determine whether they are probative of the [individuals'] relationship to [employer]"); *DeLorenzo v. Ricketts & Assocs., Ltd.*, 15-CV-2506 (VSB), 2017 WL 4277177, at *7 n.13 (S.D.N.Y. Sept. 25, 2017) ("Plaintiff may not rely on a LinkedIn profile to establish jurisdiction, as such an online profile is hearsay and does not qualify as admissible evidence."), *aff'd*, 757 F. App'x 6 (2d Cir. 2018); *see also Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 985 (C.D. Cal. 2013) ("At most, the . . . LinkedIn profile[s] establish[] that" the alleged agent "performs a function that is beneficial" to parent, which is "insufficient to establish agency[.] ").

[118] D.I. 20 at 14; D.I. 1 ¶ 19.

jurisdiction in any state's court of general jurisdiction, and (3) the exercise of jurisdiction comports with due process."[119]   As to the third requirement, "due process requires only that in order to subject a defendant to a judgement in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[120]   If a plaintiff's "claim arise under federal law, [and if the defendant] is not otherwise subject to personal jurisdiction in any District in the country, then any District may exercise jurisdiction over it, provided that the defendant has sufficient minimum contacts with the United States as a whole."[121]

As to whether the exercise of specific personal jurisdiction over a defendant would be reasonable and fair, five due process factors are considered:

> (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.[122]

Plaintiff argues personal jurisdiction exists over EU UK pursuant to Rule 4(k)(2) because the claims against it arise under federal law, and despite EU UK's argument that it cannot be sued in Delaware, it has failed to identify an alternative forum where suit is possible.[123]   Plaintiff asserts the exercise of jurisdiction comports with due

---

[119] *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltd.*, 890 F.3d 995, 999 (Fed. Cir. 2018).

[120] *Id.* at 1000 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[121] *bioMerieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2018 WL 4647483, at *3 (D. Del. Sept. 26, 2018) (citation omitted).

[122] *See M-I Drilling*, 890 F.3d at 1002.

[123] D.I. 20 at 15.

process because EU UK has "purposefully directed its activities at residents of the United States," and "those activities and this Court's assertion of personal jurisdiction would not be unreasonable or unfair."[124]  In support, plaintiff notes the dollar amount of defendants' sales in the United States and EU UK's "admissions in its Motion and via its employees' LinkedIn profiles," in particular the language utilized in the profiles.[125]

In its discussion of the five due process factors, plaintiff asserts EU UK has not identified any burden litigating in this court, or that plaintiff's and United States' interests in obtaining effective relief and enforcing the Lanham Act "outweigh any burden [EU UK] might claim."[126]  Lastly, EU UK has not identified any manner in which asserting jurisdiction in this court would be inefficient or cause a clash of substantive social policies between fora.[127]

The court has found it does not have specific jurisdiction over EU UK under the Delaware long-arm statute, and agrees with defendants that plaintiff's reliance on Rule 4(k)(2) is "misplaced " and would violate EU UK's due process rights[128] for the same reasons the court does not have specific jurisdiction over EU UK, including EU UK's lack of sales, revenue, employees in the United States.  Consequently, the court does not have an interest in adjudicating the dispute.

Thus, the court recommends the Motion to dismiss for lack of personal jurisdiction as to EU UK be granted.

---

[124] *Id.* at 15-16.
[125] *Id.* at 16.
[126] *Id.* at 17.
[127] *Id.*
[128] D.I. 22 at 9.

### C.   Whether the Complaint Should be Dismissed for Improper Venue Pursuant to Rule 12(b)(3)

Pursuant to 28 U.S.C. § 1391(b), venue is proper in "(1) a judicial district in which any defendant resides[,]" (2) "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred" or (3) " if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to [the] action."[129] Subsection (c) provides that a corporate defendant is "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question[.]"[130]

Defendants argue none of the categories apply because neither EU Defendant reside in this District and plaintiff does not, and cannot, allege "a substantial part of the events or omissions giving rise to the claim occurred" in the District of Delaware.[131] Instead, Rockwell alleges conduct by defendants that spans the entire United States.[132]

Plaintiff argues venue is proper under both § 1391(b)(1) and (2).[133]  It asserts venue is proper subject to § 1391(b)(1) since personal jurisdiction over defendants is proper.[134]  It contends venue is further appropriate under § 1391(b)(2) because defendants admitted to "committing 'substantial' acts in Delaware that bear a direct nexus to Rockwell's claims, in the form of $19,000.00 worth of sales of the accused

---

[129] 28 U.S.C. § 1391(b).
[130] 28 U.S.C. § 1391(c)(2).
[131] D.I. 16 at 14 (citing D.I. 1 ¶¶ 6-7).
[132] *Id.* (citing D.I. 1 ¶¶ 58-143).
[133] D.I. 20 at 18.
[134] D.I. 20 at 18.

Unauthorized Rockwell Products to Delaware customers."[135]  Section 1391(b)(2) "only requires a 'substantial part' of the events to have occurred in [this] [d]istrict to establish venue.  It does not require a majority of the events to take place here, nor that the challenged forum be the best forum for the lawsuit to be venued."[136]

The court finds jurisdiction is proper as to EU Illinois at least under § 1391(b)(1). The court found specific jurisdiction is proper as EU Illinois.  Pursuant to 28 U.S.C. § 1391(c)(2), EU Illinois is, therefore, "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question[.]"[137]  The court finds venue is not proper as to EU UK under either of the § 1391(b) categories.  It is not subject to specific jurisdiction, and therefore is not deemed to reside in this district.  Further, it made no sales of Rockwell parts which are the basis of plaintiff's claims.

Thus, the court recommends the Motion to dismiss for improper venue be denied as to EU Illinois and granted as to EU UK.

### D.    Whether the Court Should Grant Jurisdictional Discovery

Plaintiff requests a 60-day period to conduct jurisdictional discovery should the court require additional facts to conclude that personal jurisdiction and venue are proper

---

[135] *Id.* at 19.

[136] *See, e.g.*, *Traynor v. Liu*, 495 F. Supp. 2d 444, 451 (D. Del. 2007).

[137] 28 U.S.C. § 1391(c)(2); *see also L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 594 n.3 (D. Del. 2008). ("Since venue is applicable under § 1391(b)(1), it is not necessary to determine whether "a substantial part of the events or omissions giving rise to the claim occurred" within the forum.  § 1391(b)(2).  Additionally, § 1391(b)(3) does not grant venue, because it applies only "if there is no district in which the action may otherwise be brought.").

in the District of Delaware.[138]

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiffs claim is 'clearly frivolous.'"[139]  "However, a court should not permit discovery as a matter of course; before allowing jurisdictional discovery to proceed, '[t]he court must be satisfied that there is some indication that th[e] particular defendant is amenable to suit in this forum.'"[140]  "If a plaintiff does not come forward with '*some competent evidence*' that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed."[141]  "To receive jurisdictional discovery, plaintiffs must claim that their factual allegations establish with reasonable particularity the possible existence of requisite contacts."[142]  Bare allegations, without factual support cannot provide a basis for such a discovery request, lest it provide plaintiff an opportunity to "undertake a fishing expedition."[143]

Here, plaintiff asserts such discovery may produce evidence of:

> (1) the nature and extent of Defendants' business in Delaware, including their communications with Delaware customers who

---

[138] *Id.* at 20.

[139] *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

[140] *MacQueen v. Union Carbide Corp.*, C.A. No. 13-831-SLR-CJB, 2014 WL 6809811, at *4 (D. Del. Dec. 3, 2014) (quoting *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995), *Report and Recommendation adopted*, 134 F. Supp. 3d 803 (D. Del. 2015); *accord Draper, Inc. v. MechoShade Sys., Inc.*, No. 1:10-cv-01443–SEB–TAB, 2011 WL 1258140, at *1 (S.D. Ind. Mar. 31, 2011) ("While courts have the power to grant jurisdictional discovery, a motion to dismiss for lack of personal jurisdiction does not automatically trigger a right to jurisdictional discovery.")).

[141] *Id.* (emphasis in original) (quoting *Hansen*, 163 F.R.D. at 475).

[142] *See Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 631 (D. Del. 2015).

[143] *Id.*

> ultimately did not purchase products; (2) the degree to which [EU UK] and its employees conduct business in the United States and Delaware; and (3) the nature of the relationship between Defendants, including (a) the degree of control over [EU Illinois] that [EU UK] is permitted to and does exert; (b) the degree of overlap between Defendants' directors and officers; and (c) whether [EU Illinois] is an alter-ego of [EU UK] and also (4) probe the veracity and context of the declarations submitted by Defendants' declarants as well as the roles and responsibilities of Defendants' other employees such as those whose LinkedIn profiles are referenced above.[144]

The EU Defendants argue jurisdictional discovery is improper and would not change anything in the court's analysis or opinion.[145]  Defendants contend they have already presented all of the relevant facts, and plaintiff's assertion of jurisdiction is based on the same facts.[146]  Specifically, "EU UK has no sales in the United States," though "EU Illinois has acknowledged its few sales" to Delaware customers.[147]

The court declines to grant jurisdictional discovery.  As to EU Illinois, the court found it has personal jurisdiction, and venue is proper, therefore jurisdictional discovery is not necessary.  As to EU UK, Rockwell relies the *Beckhoff* case where it was also the plaintiff.[148]  That court found there would be specific jurisdiction in the forum if the German defendant shipped even a single accused product into the forum.[149]  The court denied the defendant's motion to dismiss for lack of personal jurisdiction and permitted Rockwell jurisdictional discovery to explore facts surrounding the German defendant's

---

[144] D.I. 20 at 20.

[145] D.I. 22 at 9-10.

[146] *Id.* (citing D.I. 20 at 5-6, 9).

[147] *Id.* at 9.

[148] D.I. 20 at 19 (citing *Rockwell Automation, Inc. v. Beckhoff Automation*, 23 F. Supp. 3d 1236 (D. Nev. 2014)).

[149] D.I. 20 at 19-20 (citing *Beckhoff*, 23 F. Supp. 3d at 1246).

interactions with the forum."[150]

Unlike *Beckhoff*, there is no allegation EU UK shipped *any* product to the United States, let alone Delaware.  The court has also explained the lack of evidence to suggest, under either of Rockwell's theories, that there is personal jurisdiction over EU UK.  Failing to present "*some* competent evidence" that personal jurisdiction over EU UK might exist, the court views plaintiff's attempt to establish an agency or alter ego theory through jurisdictional discovery would be merely a fishing expedition.

Thus, the court recommends Rockwell's request for jurisdictional discovery be denied.

## V.      RECOMMENDED DISPOSITION

Consistent with the findings herein,

IT IS RECOMMENDED that Defendants' Motion (D.I.15) be Granted-in-Part and Denied-in-Part as follows:

1.      Defendants' motion to dismiss EU Illinois for lack of personal jurisdiction be **DENIED**;

2.      Defendants' motion to dismiss EU UK for lack of personal jurisdiction be **GRANTED**;

3.      Defendants' motion to dismiss EU Illinois for improper venue be **DENIED**;

4.      Defendants' motion to dismiss EU UK for improper venue be **GRANTED**; and

5.      Plaintiff's request for jurisdictional discovery as to EU UK be **DENIED**.

---

[150] *Id.* at 20 (citing *Beckhoff*, 23 F. Supp. 3d at 1246-47).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days from the date of this Recommendation and limited to ten (10) pages. Any response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.).

June 7, 2022                                     _____/s/  Mary Pat Thynge_____
                                                CHIEF U.S. MAGISTRATE JUDGE