IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EU AUTOMATION, INC. and EU )<br>AUTOMATION AMERICA LTD., )<br>)<br>Defendants. ) | C.A. No. 21-1162 (MN) |

**MEMORANDUM OPINION**

Dominick T. Gattuso, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; Paul Tanck, Neal McLaughlin, ALSTON & BIRD LLP, New York, NY – Attorneys for Plaintiff.

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Edward F. Maluf, Jeremy A. Cohen, Owen R. Wolfe, Jeremy Schachter, SEYFARTH SHAW LLP, New York, NY – Attorneys for Defendants.

August 19, 2022
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are the objections of EU Automation, Inc. (D.I. 26) to Magistrate Judge Thynge's Report and Recommendation ("the Report") (D.I. 25). The Report recommends granting-in-part and denying-in-part the motion (D.I. 15) of Defendants, EU Automation, Inc. ("EU Illinois") and EU Automation America Ltd. ("EU UK"), to dismiss the Complaint ("Complaint") (D.I. 1) for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure, respectively. EU Illinois only objects to those portions of the Report denying its motion to dismiss for lack of personal jurisdiction. The Court has reviewed the Report (D.I. 25), EU Illinois's objections (D.I. 26) and the response thereto (D.I. 27), and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of the motion to dismiss and Plaintiff's response thereto (*see* D.I 15-18, 20-21, 22). For the reasons set forth below, EU Illinois's objections are OVERRULED, the Report is ADOPTED, and the motion to dismiss as to EU Illinois is DENIED.[1]

**I.      BACKGROUND**

The Report set forth the relevant background facts clearly. As no party has objected to the Report's recitation of facts, the Court adopts that recitation here:

> Plaintiff Rockwell is the world's largest company dedicated to industrial automation and information. Its products run a variety of industrial and commercial operations including: automotive, food processing, and pharmaceutical assembly lines; critical infrastructure such as oil refineries; and automation involving the safety of amusement park rides. A commonality among its products is that breakdowns are extremely costly and potentially dangerous. Thus, Rockwell does not sell to a mass consumer market and its industrial control products include a "quality assurance safety net"

---

[1] EU Illinois did not object to the Report's recommendation that the motion be denied based on lack of venue. And Rockwell did not object to the Report to the extent it recommended granting the motion to dismiss as to EU UK without allowing jurisdictional discovery. Therefore, the Court adopts those recommendations. The motion is GRANTED as EU UK and EU UK will be dismissed from this case.

to maintain safe and reliable operation.  Its products are sold only by Rockwell and highly trained domain experts employed by its Authorized Distributors ("ADs").  Rockwell monitors its products through its ADs and issues software and firmware updates, product safety notices, and/or recalls designed to preempt problems.

Defendant EU Illinois' principal place of business in Elk Grove Village, Illinois.  The Elk Grove Village facility is its only physical location in the United States.  It has no other offices, warehouses, or physical spaces in this country, including Delaware.  All EU Illinois employees work and are paid in Illinois; none travel to Delaware to interact with customers or for any other business purpose.  All sales to customers in the U.S. are made solely by EU Illinois.

Defendant EU UK's principal place of business [is] in the United Kingdom.  EU UK provides "some administrative services" for EU Illinois, but does not control its operations.  It has no U.S. employees, offices, warehouses, or other physical space, including in Delaware.  No EU UK employee was ever directed to travel to Delaware to interact with customers or for any other business purpose.

The EU Defendants serve as "middlemen" who purchase machine parts in the market to resell.  Part of their business is sourcing obsolete parts for older automation equipment so customers can continue to operate existing equipment with replacement parts rather than purchase new equipment from the manufacturer.

EU Illinois advertises parts for sale in the U.S. on euautomation.com/us.  Customers cannot buy directly from the website:  they must request a price quote via a phone call to a number on the website or a "click on a link."  The customer then receives a quote by email or phone and decides whether to purchase at the quoted price.  Any purchase is also made by phone or email.

From 2016 to date, EU Illinois generated U.S. sales of $107 million in pre-expense revenue, of which ~$465,000, or 0.4%, was from Delaware customers.  Sales of parts reflecting Rockwell-owned brands or trademarks generated ~$19,000, or 4%, of total Delaware revenue, and less than 0.01% of total U.S. revenue.  EU UK does not make sales or generate revenue in the U.S., including Delaware.

The EU Defendants ceased selling and advertising Rockwell products in response to plaintiff's allegations.  EU Illinois began phasing out sales in October 2020 by no longer accepting orders for Rockwell products from new U.S. customers, and only filling pre-

>existing orders for parts or orders from existing customers. Defendants' website ceased advertising plaintiff's products worldwide by November 14, 2020. EU Illinois made its last U.S. shipment of Rockwell products in August 2021.
>
>On August 11, 2021, plaintiff filed this action alleging "misleading advertising and sale of infringing Rockwell goods" by defendants. On October 22, 2021, defendants filed the instant Motion.

(D.I. 25 at 2-5).

On June 6, 2022, Judge Thynge issued the Report recommending that the motion be granted as to EU UK and denied as to EU Illinois. (D.I. 25). EU Illinois timely filed "limited" objections to the Report's "recommended denial of EU Illinois' motion to dismiss for lack of personal jurisdiction." (D.I. 26 at 1).

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court may dismiss a suit for lack of jurisdiction over a person. When a defendant challenges a court's exercise of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Turner v. Prince Georges County Public Schools*, 694 Fed. App'x 64, 66 (3d Cir. 2017) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "To meet this burden, the plaintiff must produce 'sworn affidavits or other competent evidence,' since a Rule 12(b)(2) motion 'requires resolution of factual issues outside of the pleadings.'" *Brasure's Pest Control, Inc. v. Air Cleaning Equip.*, Inc., C.A. No. 17-323-RGA-MPT, 2018 WL 337747, at *1 (D. Del. Jan. 9, 2018) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, [however], the plaintiff need only establish a prima facie case of personal jurisdiction and the

3

plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002)).

Two requirements, one statutory and one constitutional, must be satisfied for personal jurisdiction to exist over a defendant. *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). "First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Id.* (citing Fed. R. Civ. P. 4(e)). The Court must, therefore, "determine whether there is a statutory basis for jurisdiction under the Delaware long-arm statute." *Id.* (citing 10 Del. Code § 3104(c)). "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates [defendant's] constitutional right to due process." *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945))*; see also IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Delaware's long arm statute, 10 Del. C. § 3104, provides in pertinent part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State; . . . .

4

These subsections ((c)(1), (c)(2) and (c)(3)) provide for specific jurisdiction where the cause of action arises from the defendant's contacts with the forum. *Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008).

As for the second prong, the Due Process Clause "requires that a non-resident defendant have certain minimum contacts with a forum state – contacts that would provide the defendant 'fair warning' that he might be sued there – before a federal court in that forum can constitutionally exercise personal jurisdiction over that defendant." *Turner*, 694 Fed. App'x at 65-66 (quoting *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008)). It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citations omitted).

### III.   DISCUSSION

EU Illinois objects to the Report's findings that EU Illinois is subject to specific jurisdiction in Delaware on two grounds: 1) Rockwell's claims do not "arise from" Delaware contacts and 2) Rockwell fails to establish "minimum contacts" or "purposeful availment." The Court addresses each objection below.

#### A.   Statute-Based Objection

As noted above, there is no dispute that EU Illinois operates the website euautomation.com/us on which it advertises parts for sale in the U.S, that a three-step personal interaction takes place between EU Illinois and each customer before a purchase is completed, and EU Illinois has generated $465,000 in revenue from Delaware customers, including $19,000 worth of accused allegedly unauthorized Rockwell products. These actions satisfy 10 Del. C. § 3104(c)(1) and (c)(2). *L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 593 (D. Del. 2008) (finding jurisdiction where defendants "operated a website accessible in Delaware, received

orders and payments from customers in Delaware and shipped their products to Delaware."). Here, as in *L'Athene*, EU Illinois "purposefully availed [itself] of doing business with Delaware, which is shown through [its] conducting business with Delaware residents and knowingly shipping products to the State." *Id.* That EU Illinois obtained sales from its efforts that total approximately $19,000 is not sufficient to escape jurisdiction. Applicable to subsections (c)(1) and (2), "[w]here personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction." *See LaNuova D & B, S.p.A* v. *Bowe Co., Inc.* 513 A.2d 764, 768 (Del. 1968).

Similarly, EU Illinois's argument that its sales of accused products to Delaware represent less than 0.01% of its gross revenue is unavailing. In *L'Athene*, sales in Delaware of "less than 1% of defendants' sales for that year" were sufficient to support personal jurisdiction. *L'Athene* at 593–94. Similarly, in *Tristrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635 (D. Del. 2008), sales totaling "0.0015%" of defendant's overall sales were enough. *Id.* at 638-41. Thus, an exercise personal jurisdiction over EU Illinois is proper under subsections (c)(1) and (c)(2) of the Delaware long arm statute.

### B. Constitution-Based Objection

The Court must now determine whether the assertion of jurisdiction under § 3104 comports with federal due process. "Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice." *Thorn EMI North Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 275 (D. Del. 1993)(quotations omitted). The purpose of this requirement is to ensure that "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specific jurisdiction is proper where a defendant has purposefully directed its activities at residents of the forum state,

and the alleged injuries arise out of those activities. *Thorn*, 821 F. Supp. at 275-76 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

"Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citing *Burger King*, 471 U.S. at 475). "Different results should not be reached simply because business is conducted over the Internet." *Zippo*, 952 F. Supp. at 1124. The "mere operation of a commercially interactive website," however, is not by itself a sufficient basis for jurisdiction anywhere the site can be viewed. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Instead, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 451 (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987)). But when a defendant's website is specifically designed to commercially interact with the residents of a forum State, specific jurisdiction is proper because that defendant has "purposefully availed" itself of doing business with the forum State. *Id.* at 452. Evidence of purposeful availment can be "directly targeting its website to the [S]tate, knowingly interacting with residents of the forum [S]tate via its website, or through sufficient other related contacts." *Id.* at 454.

Here, it is undisputed that EU Illinois operated a website accessible in Delaware, corresponded with customers located in Delaware, received orders and payments from customers in Delaware, and shipped its products to Delaware. EU Illinois did not simply have a passive website. It interacted via email and telephone to discuss price quotes and finalize orders with individuals in Delaware, and in those communications purposefully targeted marketing efforts towards Delaware residents. Those efforts resulted in sales to residents of Delaware. Thus, the

sales EU Illinois made are not the "kind of 'fortuitous,' 'random,' and 'attenuated' contacts the Supreme Court has held insufficient to warrant the exercise of jurisdiction." *Toys "R" Us*, 318 F.3d at 455 (quoting *Burger King*, 471 U.S. at 475). And EU Illinois purposefully availed itself of doing business with Delaware.

Moreover, the Court is not persuaded by EU Illinois's contention that the sales of relevant products are less than one percent of its overall revenue, and thus insufficient to establish specific personal jurisdiction. Rockwell's asserted injuries due to infringement of the trademarks at issue arose from EU Illinois's directed activity. Because EU Illinois's forum-related conduct forms the basis of the injuries alleged by Rockwell, EU Illinois's contacts do not need to be continuous and substantial. *Osteotech, Inc. v. GenSci Regeneration Scis.*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998). Thus, personal jurisdiction over EU Illinois comports with fair play and substantial justice.

## IV. CONCLUSION

For the reasons stated above, EU Illinois's objections to the Report are OVERRULED and the Report is ADOPTED. Defendants' Motion to Dismiss (D.I. 15) is GRANTED-IN-PART and DENIED-IN-PART. A form of order will follow.