IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1162 (MN) |
| ) | |
| EU AUTOMATION, INC. and EU ) | |
| AUTOMATION AMERICA LTD., ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM OPINION**

Dominick T. Gattuso, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE; Paul Tanck, Neal McLaughlin, ALSTON & BIRD LLP, New York, NY – attorneys for Plaintiff

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Edward F. Maluf, Jeremy A. Cohen, Owen R. Wolfe, Jeremy Schachter, SEYFARTH SHAW LLP, New York, NY – attorneys for Defendants

October 27, 2022
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 32) of Defendant EU Automation, Inc. ("Defendant" or "EU Illinois") to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court GRANTS Defendant's motion.

## I.   BACKGROUND

Plaintiff Rockwell Automation, Inc. ("Plaintiff" or "Rockwell") is a Delaware corporation with its principal place of business in Milwaukee, Wisconsin. (D.I. 1 ¶ 5). Defendant EU Illinois is an Illinois corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 6; *see also* D.I. 30 ¶ 6). Now-dismissed Defendant EU Automation America Ltd. ("EU UK") is a United Kingdom entity with its principal place of business in Stafford, United Kingdom. (D.I. 1 ¶ 7). On August 11, 2021, Plaintiff filed the present action, alleging that Defendant's unauthorized sale of Rockwell products constitutes trademark infringement, false advertising and false designation of origin under the Lanham Act. (*See id.* ¶¶ 144-64). Additionally, Plaintiff asserted a claim of unfair competition under the Delaware code, as well as a claim of common-law unfair competition. (*Id.* ¶¶ 165-81). And Plaintiff also included a claim of unjust enrichment. (*Id.* ¶¶ 182-84).

On October 22, 2021, Defendants EU Illinois and EU UK filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (*See* D.I. 15, 16, 17 & 18; *see also* D.I. 20, 21 & 22). Judge Thynge recommended denying the motion as to EU Illinois but granting the motion as to EU UK, ultimately recommending dismissal of EU UK from the action for lack of personal jurisdiction and for improper venue. (*See* D.I. 25). Plaintiff did not object to Judge Thynge's recommended disposition. This Court overruled Defendants' objections and adopted Judge Thynge's report and recommendation. (*See* D.I. 28 & 29).

The only remaining defendant, EU Illinois, answered the complaint on September 2, 2022 (D.I. 30) and, on September 22, 2022, filed a motion to transfer this action to the Northern District of Illinois, where EU Illinois is incorporated and headquartered (*see* D.I. 32, 33 & 34).  Plaintiff opposes transferring this action and briefing on Defendant's motion was complete on October 11, 2022.  (*See* D.I. 39, 40 & 41).

## II.  LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'"  *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).  Plaintiff's choice of location in bringing the action "should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In determining whether an action should be transferred under § 1404(a), the Third Circuit has recognized that:

> courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted).  The *Jumara* court went on to describe twelve "private and public interests protected by the language of § 1404(a)."  *Id.*  The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to

2

> the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. The Third Circuit has held, however, that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III. DISCUSSION

As an initial matter, the Court addresses the threshold inquiry under § 1404(a) – *i.e.*, whether this action might have originally been brought in the transferee district. There does not appear to be serious dispute that this action could have originally been brought in the Northern District of Illinois, which is where EU Illinois is both incorporated and headquartered. (*See* D.I. 1 ¶ 6; D.I. 30 ¶ 6). Indeed, Plaintiff's opposition is focused on the private and public interest factors under *Jumara*. (*See* D.I. 39 at 3-11). Thus, in the Court's view, the threshold inquiry under § 1404(a) is satisfied and the only issue before the Court is whether to exercise its discretion under

3

§ 1404(a) to transfer the case to the Northern District of Illinois. The Court addresses the *Jumara* factors in turn below.

### 1. Plaintiff's Forum Preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer."[1] *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Defendant recognizes that Plaintiff's choice to litigate in Delaware weighs against transfer but nevertheless argues that this choice should not weigh against transfer with "any particular force" because the only connection between Plaintiff's claims and this forum are "minimal sales in Delaware." (D.I. 33 at 4-5). Rather, in Defendant's view, this cause of action is based on events that occurred all over the United States, with no particular connection between Plaintiff's claims and Delaware. (*Id.* at 5). As such, Plaintiff's preferred forum is purportedly entitled to less weight than it may otherwise be afforded. (*Id.*; *see also* D.I. 41 at 2). Plaintiff argues that its choice of forum is to be given "paramount" consideration regardless of the cause of action's connections to Delaware. (D.I. 39 at 4-5).

---

[1] This Court has already found that personal jurisdiction exists over EU Illinois. (*See* D.I. 28 at 5-8). And Judge Thynge found that venue is proper here – a finding that EU Illinois did not challenge. (D.I. 25 at 24-25; *see also* D.I. 26 (EU Illinois's objections only challenging personal jurisdiction findings in Judge Thynge's report and recommendation)).

The Court agrees with Plaintiff. Although Plaintiff's choice of forum is not dispositive, this Court follows the reasoning in *Burroughs Wellcome*, in which Judge Stapleton found that the Third Circuit's rule that plaintiff's choice is of paramount consideration is "an across-the-board rule favoring plaintiff's choice of forum." 392 F. Supp. at 762-63 & 763 n.4; *see also VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018). The Court also finds that Defendant's reliance on *Paycom Software, Inc. v. Travelers Casualty & Sur. Co. of Am.*, No. 21-1403-CFC, 2022 WL 1063845 (D. Del. Apr. 8, 2022), is misplaced. There, Chief Judge Connolly noted that "a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer." *Id.* at *3. But that statement is referring to the overall *Jumara* balancing analysis – not the plaintiff's choice of forum as an individual factor. Indeed, in *Paycom*, Chief Judge Connolly treated plaintiff's forum choice as "a paramount consideration" despite the only connection to Delaware being plaintiff's incorporation there. The same is true in this case – Plaintiff's choice to litigate in Delaware remains entitled to paramount consideration.

2. Defendant's Forum Preference

This factor favors transfer. Defendant's interest in having this case transferred to the Northern District of Illinois is apparent and supported by legitimate reasons – *e.g.*, Defendant is incorporated and headquartered in that forum, most (if not all) of its relevant witnesses and documents are located there, etc.

3. Whether the Claims Arose Elsewhere

This factor slightly favors transfer. As to where trademark infringement claims arise, the Court looks at "where the unauthorized passing off occurred – whether that occurs solely within

5

one district or many." *Cottman Transmission Systems v. Martino*, 36 F.3d 291, 294-95 (3d Cir. 1994). This analysis may factor in "from where the individual defendants likely directed the infringing activities." *Prime Hookah, Inc. v. MK Distributors, Inc.*, No. 3:19-7283-FLW-TJB, 2020 WL 563524, at *4 (D.N.J. Feb. 5, 2020). Similarly, as to false advertising and deceptive trade practices,[2] those claims "arise where a customer is misled by the challenged conduct." *Puff Corp. v. KandyPens, Inc.*, No. 20-976-CFC, 2020 WL 6318708, at *3 (D. Del. Oct. 28, 2020).

Defendant argues that this factor weighs in favor of transfer because (1) there were relatively minimal sales of the purportedly unauthorized Rockwell products in Delaware[3] and (2) the sales that did occur in Delaware were the result of interactions that occurred in or originated out of Illinois (where all EU Illinois salespeople are located). (D.I. 33 at 5-6; *see also* D.I. 34 ¶ 14). In support, Defendant relies on *Papst Licensing*, where Judge Burke noted that courts in this District typically focus on the location of the purportedly infringing conduct rather than the location of the sales when evaluating where a patent infringement claim arises. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015) (this factor favors transfer in patent case where accused products were developed and tested – thereby infringing the accused method claims – in Northern District of California rather than Delaware). Plaintiff argues there is "no evidence regarding acts of infringement" that Defendant

---

[2] Neither side addresses Plaintiff's claims under Delaware law. (*Compare* D.I. 33 at 5-6 (Defendant apparently focusing on trademark infringement), *with* D.I. 39 at 5-6 (Plaintiff focusing on Lanham Act claims)). The Court assumes that this is because the federal claims are the real focus of this case. Indeed, the state law claims appear to arise out of the same operative facts as the Lanham Act claims. In any event, that Plaintiff has asserted claims of unfair competition under Delaware law does not preclude transfer under § 1404(a). *See, e.g., Prime Hookah*, 2020 WL 563524, at *4 (transferring trademark infringement and unfair competition action from District of New Jersey to District of Massachusetts under § 1404(a) despite plaintiff asserting claims under New Jersey law).

[3] Defendant apparently no longer sells any Rockwell products and has disposed of any remaining inventory. (D.I. 34 ¶¶ 24-28).

6

committed in Illinois – instead, there is only evidence of unauthorized sales in Delaware. (D.I. 39 at 5). Yet Plaintiff then concludes by asserting that "the acts underlying Rockwell's claims arose in Delaware *and across the United States*." (*Id.* at 6 (emphasis added)).

Given that Plaintiff apparently admits that its claims are based on conduct from all over the United States, the Court cannot conclude the claims at issue in this case arose in Delaware – or that Delaware is the only convenient forum. Mirroring Plaintiff's concession, Defendant presents evidence that a few thousand dollars in purportedly infringing sales ultimately made their way to Delaware, but that appears to represent only a fraction of sales made across the United States. (D.I. 34 ¶¶ 22 & 24 (over relevant timeframe, only $528,057 in revenue from Delaware sales (and only $19,000 of that from Rockwell products) out of $107 million in sales across United States)). Moreover, the evidence here suggests that the Delaware sales were made only because of conduct that occurred in Illinois. (*See, e.g., id.* ¶¶ 19-21). Indeed, although EU Illinois offered the purportedly infringing products for sale on its website, customers cannot purchase directly from the site and instead must contact the company and work with an EU Illinois employee to make a purchase. (*Id.* ¶¶ 14 & 21). Those employees were always physically located in Illinois. (*Id.*). Under the circumstances here, the Court concludes Plaintiff's claims arose based on conduct that largely occurred in Illinois. Therefore, this factor weighs slightly in favor of transfer.

        4.      Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor weighs in favor of transfer. Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d

7

218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).

Starting with the parties' physical locations, as Defendant points out (D.I. 33 at 6-7), the Northern District of Illinois is a significantly closer forum for both parties. The Northern District of Illinois has two divisions (and thus locations): the Eastern division with a courthouse in Chicago and the Western Division with a courthouse in Rockford. EU Illinois is headquartered in Elk Grove Village, Illinois, and it is approximately 69 miles from the Rockford courthouse and 22 miles from the Chicago courthouse.[4] (D.I. 33 at 2-3 & 7; *see also* D.I. 34 ¶ 4). In fact, the only physical location maintained by EU Illinois is in Elk Grove Village. (D.I. 34 ¶¶ 4-5). Although Plaintiff does not maintain a physical location in Illinois, it is headquartered in nearby Milwaukee, Wisconsin. (D.I. 1 ¶ 5). Those headquarters are located approximately 93 miles from the Rockford courthouse and 90 miles from the Chicago courthouse. (D.I. 33 at 2 & 6-7; *see also* D.I. 39 (Plaintiff's answering brief does not contest these calculated distances)). In contrast to these relatively short distances by car, the courthouse in Delaware is at least 600 miles away from both parties, whether calculated by car or as the crow flies. The Northern District of Illinois is indisputably significantly closer to both Defendant and Plaintiff (and likely most of the employee witnesses).

As to the associated logistical and operational costs to the parties in traveling to Delaware (as opposed to Illinois) to litigate, Defendant argues that these costs would be lower for both sides

---

[4] The Court has taken judicial notice of these distances calculated by Google Maps, which correspond to distances by car between the relevant locations. The distances between the parties and the courthouses as the crow flies is even shorter. (*See* D.I. 33 at 2-3 (as the crow flies, Rockwell is about 80 miles from Rockford courthouse and 80 miles from Chicago courthouse, whereas EU Illinois is about 61 miles from Rockford courthouse and 19 miles from Chicago courthouse)).

if the case were litigated in the Northern District of Illinois instead of Delaware. (*See* D.I. 33 at 7). Because the Northern District of Illinois is much closer to where each party is physically located, this point seems hard to dispute. Indeed, Plaintiff largely ignores it. (*See* D.I. 39 at 6-7). Instead, Plaintiff argues that Defendant has failed to prove that litigating here would "pose a unique or unusual burden" or that it lacks the financial means to do so. (*Id.*). Although Defendant may be able to litigate in Delaware, that does not mean it is logistically or operationally convenient. Indeed, as Defendant points out, relevant employees will have to spend substantial time away from the office to travel to Delaware for trial (and other required proceedings) if this action proceeds in Delaware. (D.I. 33 at 7-8; D.I. 34 ¶ 23). The same is not true if the action proceeds in the Northern District of Illinois. Because Defendant only has 32 employees and they are all located in Illinois, litigating this case in Delaware imposes an operational burden on Defendant that is less pronounced if the action is transferred to the Northern District of Illinois.

Finally, Plaintiff argues that "[n]either party has a tenuous financial condition and the few in-court appearances that will be required" will not be disruptive to either party. (D.I. 39 at 6). Defendant does not dispute this characterization. It appears that both Plaintiff and Defendant are large corporations with more than adequate financial resources to litigate in this District, as well as in the Northern District of Illinois. This point is bolstered by the fact that the Court anticipates the majority of discovery will likely occur in some place agreed upon by the parties. *See, e.g.*, *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 328 (D. Del. 2013) ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties.").

In sum, although both parties are financially stable and can shoulder the cost of litigating in this District, both parties (and employee witnesses) are physically located much closer to the

9

Northern District of Illinois. Indeed, Defendant resides there, and Plaintiff is just 90 miles away in Milwaukee. Any logistical or operational cost of travel associated with this litigation will be substantially less if this action proceeds in the Northern District of Illinois. This also includes minimizing the amount of time employees would lose to traveling to Delaware instead of Chicago or Rockford. The Court ultimately finds that litigating in Delaware is less convenient for both parties than litigating in the Northern District of Illinois. This factor weighs in favor of transfer.

5.  Convenience of the Witnesses

This factor is neutral. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012).

On this factor, both sides focus on the availability of non-party witnesses. Defendant argues "there may be a number of critical non-party witnesses, including Rockwell-authorized distributors and other sellers of Rockwell parts" who are located outside of Delaware. (D.I. 33 at 8). Defendant also argues that "there may be former employees at both Rockwell and EU Illinois" who are not in Delaware but possess relevant information. (*Id.* at 8-9). Defendant, however, does not identify any such witness or offer any further information to this speculation. Plaintiff points out this failure and further argues that there are several non-party witnesses in the United Kingdom and Germany for which trial in Delaware would be purportedly more convenient than Illinois.

10

(*See* D.I. 39 at 8). Although Plaintiff names these individuals,[5] it offers no meaningful discussion of inconvenience to these witnesses in either forum beyond attorney argument. Ultimately, no party has identified any witness who would be unavailable for trial in Delaware or Illinois, which is the main consideration under this *Jumara* factor. *See Jumara*, 55 F.3d at 879. Therefore, the Court concludes that this factor is neutral.

6.      Location of Books and Records

This factor is neutral. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendant does not meaningfully address this factor in its briefing (D.I. 33 at 8-9; D.I. 41 at 4), although the accompanying declaration indicates that all of Defendant's documents and records are stored in Illinois and no documents or records are stored in Delaware (D.I. 34 ¶¶ 8 & 20). Defendant also speculates that there "may be" documents in the possession of unidentified non-party witnesses located outside of Delaware. (D.I. 33 at 8-9). Ultimately, Defendant argues that this factor favors transfer because "Delaware cannot be said to offer any advantage in this regard." (*Id.* at 9). Plaintiff responds that Defendant has failed to demonstrate that some documentary evidence[6] could not be produced in this District (as opposed to the Northern District of Illinois). (D.I. 39 at 8).

---

5      Plaintiff largely just refers back to papers that it filed in opposition to Defendants' prior motion to dismiss for improper venue and lack of personal jurisdiction. Cross-references to previously filed docket items in this manner are highly disfavored in this Court.

6      Plaintiff raises the possibility that some non-documentary physical evidence (*e.g.*, equipment) may be relevant in this case and that any such evidence "is likely to be in Rockwell's possession." (D.I. 39 at 8). Defendant never raised this and Plaintiff's argument – which cites nothing – appears only to be speculation at this point.

11

The Court agrees that Defendant has failed to show that this factor favors transfer. The Third Circuit has instructed that the relevant consideration here is whether the evidence could not be produced in the competing fora. *See Jumara*, 55 F.3d at 879. Although Defendant's documents are maintained and stored in Illinois, with the state of technology in litigation today and the ease with which documentary evidence can be produced electronically, this factor should be afforded minimal weight. *See, e.g.*, *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150-CFC, 2020 WL 2113528, at *4 (D. Del. May 4, 2020); *Intellectual Ventures I*, 842 F. Supp. 2d at 759. This is especially true where, as here, Defendant has failed to demonstrate that some "documentary evidence relevant to this action is found exclusively" in the Northern District of Illinois. *See VLSI*, 2018 WL 5342650, at *7. Therefore, the Court finds that this factor is neutral.

### 7. Enforceability of the Judgment

This factor is neutral as judgments from this District and the Northern District of Illinois would be equally enforceable.

### 8. Practical Considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendant argues that this factor weighs in favor of transfer because every EU Illinois witness is located in Illinois and none are located in Delaware. (*See* D.I. 33 at 9). Moreover, Defendant suggests that losing senior employees to trial in Delaware will be burdensome on their business operations. (*Id.* at 9-10). Defendant also asserts its belief that every Rockwell witness is located in Milwaukee and none are in Delaware. (*Id.*). In Defendant's view, these various practical considerations make trial easier and less expensive in the Northern District of Illinois as compared to Delaware. Plaintiff responds that it offered to reduce the burden on Defendant by permitting remote depositions, but Plaintiff

12

never disputes that all of its witnesses are in Milwaukee (and not close to Delaware). (D.I. 39 at 8-9). Plaintiff also argues that this Court has the benefit of "Third Circuit precedent directly addressing Rockwell's claims and EU Automation's indicated defenses in this action," citing a relatively recent case out of the District of New Jersey. (*Id.* at 9 (citing *Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-5246-RBK/JS, slip op. (D.N.J. Nov. 24, 2020))).[7]

As to the *Radwell* case from the District of New Jersey, that case involved a different defendant, different products, different conduct and additional causes of action not at issue here. The Court does not believe it has any bearing on the practical considerations of making this trial easy, expeditious or inexpensive. And the parties' remaining arguments "have been raised, in the same way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm 3DS Innovations LLC v. SK Hynix, Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Therefore, because there is no broader public benefit to this case proceeding in this Court versus the Northern District of Illinois (or vice versa), this factor is neutral. *See W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

         9.      <u>Relative Administrative Difficulty Due to Court Congestion</u>

This factor weighs in favor of transfer. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[8] as of June 30, 2022, which indicate that, in the District of Delaware,

---

[7]     Plaintiff claims that although "this precedent is available to the Northern District of Illinois for consideration, litigating this case in Delaware would obviate the additional effort that would be required of a court in Northern District of Illinois to adopt it as its own." (D.I. 39 at 9). The opinion from the District of New Jersey, however, is not binding on this Court any more than it is on courts in the Northern District of Illinois.

[8]     The June 2022 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

13

the median length of time between filing and trial for civil cases is 36 months and the median length of time between filing and disposition in civil cases is 8.1 months. In the Northern District of Illinois, the median lengths of time in civil cases between filing and trial and filing and disposition are 48.9 months and 7.2 months, respectively. The June 2022 profile also indicates that there are 562 cases pending per judgeship in the District of Delaware, whereas there are 547 cases pending per judgeship in the Northern District of Illinois. And as for weighted filings, the District of Delaware has 873 per judgeship compared to 366 per judgeship in the Northern District of Illinois. Although there are similarities between this District and the Northern District of Illinois in terms of caseload and the median length of time between filing and disposition for civil cases, the median length of time between filing and trial in the Northern District of Illinois is about a year longer than in this District. That being said, there is a significant difference between the two fora in civil judicial workload when accounting for weighted filings.[9] That metric, which factors in how complex and time-consuming civil actions are, suggests that the Northern District of Illinois is a much less congested forum because it has about 500 fewer weighted filings per judgeship than Delaware. In the Court's view, this factor weighs in favor of transfer.

      10.  <u>Local Interest in Deciding Local Controversies at Home</u>

This factor is neutral. Defendant argues that although the accused products in this case were sold nationally, "only the slimmest fraction of the allegedly infringing products" at issue in this case were sold in Delaware, thereby suggesting that this District has no particularized local interest in the controversy. (D.I. 33 at 11). In fact, in Defendant's view, that those Delaware sales arose from conduct by EU Illinois employees who were physically located in Illinois at the time the sales were consummated means that Illinois has a stronger local interest in this dispute than

---

[9]  As a point of reference, the national average for weighted filings is 501 per judgeship.

14

Delaware. (*Id.*). Defendant further contends that it would be unfair to "burden citizens of Delaware" with jury service in this case where the only connection between the action is Plaintiff's incorporation here. (*Id.*). In response, Plaintiff reiterates the fact that Defendant's conduct nationally is at issue and asserts that "the interest in Delaware deciding this dispute is no more or less compelling than for any other district in which Defendant has committed the acts underlying Rockwell's claims." (D.I. 39 at 10). Therefore, according to Plaintiff, this factor is neutral.

Many of the arguments offered by Defendant are more properly addressed under other *Jumara* factors (*e.g.*, whether the claim arose elsewhere). Ultimately, the Court is unpersuaded that either forum has a more significant local interest in this dispute. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, No. 19-1687-CFC-CJB, 2020 WL 4335945, at *8 (D. Del. July 28, 2020) ("With both sides having something to say, but with neither side demonstrating that this case will significantly affect the public at large in either district, this factor is neutral."). Thus, in the Court's view, this factor is neutral.

### 11. Public Policies of the Fora

This factor is neutral. Plaintiff is a Delaware corporation and public policy encourages Delaware corporations to resolve disputes in Delaware courts. *See, e.g.*, *Graphics Props. Holdings Inc.*, 964 F. Supp. 2d at 331 (even where only one party is a Delaware corporation, public policy encouraging Delaware corporations to resolve disputes in Delaware weighs against transfer). That being said, Plaintiff is headquartered in Wisconsin and Defendant is incorporated and headquartered in Illinois. There are thus similar arguments for the Northern District of Illinois (and the Eastern District of Wisconsin as well). Public policy favors resolution of this dispute in either this District or the Northern District of Illinois.

    12.  Familiarity of the Trial Judge with the Applicable State Law in
        Diversity Cases

Defendant argues that this factor is neutral (D.I. 33 at 12), whereas Plaintiff argues that this factor weighs against transfer because there are two counts arising under Delaware law (D.I. 39 at 11). Plaintiff asserts a claim of unfair competition under the Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532 *et seq.*, as well as a claim of common law unfair competition. (*See* D.I. 1 ¶¶ 165-81).[10] The DTPA codifies (but does not preempt) the common law of unfair competition. *See Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 665 n.17 (D. Del. 2008). Although it is true that this Court would be more familiar with Delaware law than a court in the Northern District of Illinois, the standards for proving the state law claims here mirror the federal claims. *See Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) ("Courts reviewing [Delaware Deceptive Trade Practices Act] violations apply the same standards as they apply to [Lanham Act] trademark infringement claims (*i.e.*, valid and protectable mark, plaintiff owns mark, and likelihood of confusion)."). Therefore, the Court finds that there is unlikely to be any entirely Delaware-specific law at issue in this case such that this forum has any great advantage over the Northern District of Illinois. This factor is largely neutral in this case.

    13.  Balancing the Private and Public Factors

After balancing the twelve *Jumara* factors, the Court concludes that this case should be transferred to the Northern District of Illinois. Seven factors are neutral and four factors weigh in favor of transfer, with one favoring transfer only slightly. One factor weighs against transfer, which is Plaintiff's choice of this forum and it is to be given paramount consideration. Looking at

---

[10] Plaintiff does not bother to identify which of the twelve possible provisions of the DTPA were purportedly violated by Defendant's conduct in this case. (*See* D.I. 1 ¶¶ 165-71 (repeating citation to "6 Del. C. § 2532 *et seq.*" without identifying a subsection)).

16

the factors together and giving each its appropriate weight, Defendant has shown that the *Jumara* factors weigh strongly in favor of transfer.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) is GRANTED. An appropriate order will follow.